Thomas Monaghan, ISB #7675
Thomas Monaghan Law, PLLC
409 S. 8th St.
Room 205
Boise, ID  83702
(208) 813-4766
tom@tmonaghanlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

(HONORABLE AMANDA K. BRAILSFORD)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs<br><br>JOSIAH PAUL YEASLEY,<br><br>Defendant. | Case No: 1:23-cr-00273-AKB<br><br>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT |

### Introduction

Mr. Yeasley respectfully moves the Court to dismiss Count One of the superseding indictment, charging him with possessing obscene visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 1466A(b)(1). Dismissal is required because § 1466A(b)(1) violates his fundamental rights under the First Amendment as applied to his alleged private, in-home possession of purely virtual obscene imagery.

**Memorandum in Support of
Defendant's Motion to Dismiss - 1**

As revolutionary artificial intelligence (AI) technological advances have increasingly made it easier for those so inclined to create photorealistic, yet completely fabricated, virtual images of minors in sexually explicit contexts, the government appears to have been attempting to expand the reach of 18 U.S.C. § 1466A(b)(1), to criminalize the private possession of AI-generated obscene images of minors engaging in sexually explicit conduct.

Although the Supreme Court's jurisprudence had largely held that obscenity and child pornography are two categories of speech that generally are afforded no protection under the First Amendment, in Stanley v. Georgia, 394 U.S. 557, 561 (1969), the Supreme Court noted that the cases in question had dealt with the use of the mails or some form of public dissemination or distribution.

In Stanley, the Court held that "the mere private possession of obscene matter cannot constitutionally be made a crime." Id. at 559. The Court grounded this principle in fundamental First Amendment values. The Court drew a distinction between the State's ability to regulate obscenity in public, but a person's home has an "added dimension" and it is well established that the Constitution protects the right to receive information and ideas. Id. at 564. Also "fundamental is the right to be free, except in very limited circumstances, from unwanted intrusions into one's privacy. Id. "Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's home. If the First Amendment means anything, it means that a State has no business telling a man,

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 2**

sitting alone in his own house, what books he may read or what films he may watch." Id. at 564-65.

While the unanimous Supreme Court extolled traditional notions of individual liberty, Georgia was asserting the right to protect individuals' minds from the effects of obscenity. "We are not certain that this argument amounts to anything more than the assertion that the State has the right to control the moral content of a person's thoughts. Id. at 566.

This distinction and emphasis on the sanctity of the home and the receipt of information regarding the right to receive information and ideas, regardless of their social worth. The First Amendment, as made applicable to the States by the Fourteenth Amendment. The Court's emphasis on the sanctity and significance of one's home can be seen throughout this opinion. This notion of an individual's retreat in one's home is really a great idea.

### Procedural History

On October 11, 2023, the grand jury returned an indictment against Mr. Yeasley, alleging that he "did knowingly possess a visual depiction(s) of any kind that depicts a minor engaging in sexually explicit conduct that is obscene," and asserting the requisite link to interstate and foreign commerce necessary to invoke federal jurisdiction through his Samsung Galaxy S3 cellular phone – all in violation of 18 U.S.C. § 1466A(b)(1). The indictment also contained a provision seeking criminal forfeiture of any obscene material and Mr. Yeasley's phone.

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 3**

On February 13, 2024, the grand jury returned a superseding indictment, again charging him with a single violation of 18 U.S.C. § 1466A(b)(1). Although the language in the sole count charging the possession of obscene images offense and the forfeiture provision is identical in both charging documents, the superseding indictment adds a "Special Allegation" asserting that Mr. Yeasley's possession of these unspecified obscene visual representations of the sexual abuse of children occurred following his prior conviction for violating 18 U.S.C. § 2252A(a)(5)(B) (access with intent to view).

The government has included this allegation to provide notice of its position that Mr. Yeasley is subject to a recidivist enhancement triggering a 10-year mandatory minimum term of imprisonment upon conviction. Section 1466A provides that those convicted of possessing obscene visual depictions of minors engaged in sexually explicit conduct shall be subject to the penalties set forth in 18 U.S.C. § 2252A(b)(2). That section provides for the mandatory 10-year minimum if the person's conviction occurs after a prior conviction under Chapter 110 of Title 18, or any of the other specified chapters.

Separately, Mr. Yeasley's supervising probation officer filed a petition in Case No. 1:16-cr-00179-AKB, alleging that Mr. Yeasley violated the Court's supervised release conditions by, inter alia, committing the new possession of obscenity offense. The Court has consistently continued the final revocation hearing on Mr. Yeasley's pending violations of supervised release to have those proceedings track with the

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 4**

reset trial dates for the new offense. Mr. Yeasley was subject to such release conditions due to his prior conviction under 18 U.S.C. § 2252A(a)(5)(B).  On February 18, 2017, Mr. Yeasley was sentenced to 30 months of imprisonment, followed by a 10-year term of supervised release.

Mr. Yeasley did not oppose the government's motion to have him detained pending resolution of his dual proceedings.  The novel issues presented in Mr. Yeasley's two cases have resulted in multiple extensions of the dates for the trial and revocation hearing.  The gravity of this case has also contributed to the defense's need to postpone the trial and related revocation hearing to such an extent.  As noted, the government has signaled through the Special Allegation in the superseding indictment that Mr. Yeasley faces a recidivist enhancement upon conviction that will mandate a prison sentence of no less than 10 years.

## Factual Background

The investigation leading to Mr. Yeasley being charged with violating 18 U.S.C. § 1466A(b)(1) began on or about May 16, 2023, when Selvedin Mustafic, Mr. Yeasley's supervising probation officer, received a notification from IPPC Technologies alerting him that images displayed on Mr. Yeasley's phone had been flagged for potentially violating his supervision conditions.

Following his completion of treatment and years of successful supervision by U.S. Probation, Officer Mustafic decided to allow Mr. Yeasley to use a smartphone. However, the restoration of this privilege was contingent on the installation of IPPC

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 5**

Technologies' Computer Monitoring Program so that the content of those sites visited by Mr. Yeasley with the smartphone could be watched.  Mr. Yeasley cooperated with the timely installation of the Computer Monitoring Program on the smartphone.

After being alerted by the Computer Monitoring Program, Officer Mustafic reviewed numerous screenshots it had taken, as well as an IPPC report detailing the incident. Although numerous images were flagged as possibly problematic, the government has identified only two images possessed by Mr. Yeasley in violation of § 1466A(b)(1).

Officer Mustafic reported his discovery of these two inappropriate images and provided copies of the two screenshot images to Internet Crimes Against Children Senior Investigator Ken Boals on or about May 16, 2023.  Officer Boals included vivid and detailed descriptions of these two images depicting minors engaging in sexually explicit conduct in his affidavit supporting his request for a warrant to search Mr. Yeasley's phone.

It is undisputed that the two images that are the subjects of the indictment charging Mr. Yeasley with violating § 1466A(b)(1) do not depict real children.  Rather, both are purely virtual images of minors that were entirely AI-generated.

The ICAC investigators seized Mr. Yeasley's phone and obtained a search warrant for it.  The forensic extraction performed pursuant to the issued search warrant failed to turn up the two images that are the subject of the search warrant application.  Investigator Boals did locate a text file for pixiv.net for May 12, 2023,

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 6**

indicating that Mr. Yeasley accessed the site on May 12, 2023 – this was found to be consistent with the original report created by U.S. Probation, as well as Mr. Yeasley's statements about how he had only looked at the images in question in May 2023.

## Rule 12(b)

Federal Rule of Criminal Procedure 12(b) authorizes the pretrial resolution of legal issues that do not require the Court to resolve factual disputes central to the general issue of guilt. See e.g., United States v. Haig, Case No. 2:18-CR-256 JCM (D.Nev. May 08, 2019) (Defendant properly asserted facial and as-applied constitutional challenges under Rule 12(b)). Motions to dismiss the indictment for failure to state an offense can also be brought under the rule. See e.g., United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).

I. **Section 1466A(b)(1) is Unconstitutional As Applied to Mr. Yeasley's Private In-Home Possession of Virtual Images of Obscenity**

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. However, the Supreme Court has long recognized that "[t]he freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245-46, 122 S.Ct. 1389 (2002); see also United States v. Williams, 553 U.S. 285, 288, 128 S.Ct. 1830, 1835 (2008) ("We have long held that obscene speech – sexually explicit material that violates fundamental

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 7**

notions of decency – is not protected by the First Amendment") (citing, <u>Roth v. United States</u>, 354 U.S. 476, 484–485, 77 S.Ct. 1304 (1957)).

### A.    <u>Miller v. California</u>

In <u>Miller v. California</u>, 413 U.S. 15, 93 S.Ct. 2607 (1973), the Supreme Court articulated a three-part test to guide a jury's determination whether material is obscene: "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."  <u>Id.</u> at 24, 93 S.Ct. 2607 (internal quotation marks and citations omitted). This three-part test continues to be the legal framework for evaluating whether material can be characterized as obscene. <u>See</u> <u>United States v. Schales</u>, 546 F.3d 965, 970 (9th Cir. 2008) (citations omitted).

### B.    <u>New York v. Ferber</u>

Nearly a decade after <u>Miller</u>, the Court held in <u>New York v. Ferber</u>, 458 U.S. 747, 102 S.Ct. 3348 (1982), that the government can constitutionally prohibit the creation or promotion of pornography *featuring real children* – regardless of whether it meets the <u>Miller</u> obscenity standard.  The Court reasoned that child pornography is different from obscenity because it involves speech integral to the criminal conduct its creation necessarily involves. Where <u>Miller</u> accommodated "the State's interests

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 8**

in protecting the 'sensibilities of unwilling recipients' from exposure to pornographic material," the harm inflicted by child pornography stems directly from its production. Id. at 756, 102 S.Ct. 3348. The content of such material cannot be separated or extricated from the child abuse required to create it, and the state interest in prosecuting the sexual exploitation of children outweighs any serious literary, artistic, political, or scientific value a work may have. Id. at 761, 102 S.Ct. 3348 ("It is irrelevant to the child [who has been abused] whether or not the material ... has a literary, artistic, political or social value.") (internal citation omitted).

### C.    Stanley v. Georgia

Fifty-six years ago, in Stanley v. Georgia, 394 U.S. 557 (1969), the Supreme Court struck down Georgia's ban on possessing obscene films at home, holding that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." The core enduring holding in Stanley was rooted in the fundamental "right to receive information and ideas, regardless of their social worth" and the right to be free from a government empowered "to control men's minds." Id. at 565. "If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." Id. at 565.

While subsequent cases have limited Stanley to its core holding, they have not overruled it. See e.g., United States v. Reidel, 402 U.S. 351 (1971) (recognizing that States retain broad power to regulate obscenity; the right recognized in Stanley does

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 9**

not extend to the distribution or commercial transportation of obscenity). This core principle articulated in Stanley endures, grounded on the twin foundations of freedom of thought and receipt of information, as well as the traditional sanctity of the home. Id. at 564-68.

In reaching this conclusion, the Court acknowledged that its past decisions regarding obscenity, such as Roth v. United States, 354 U.S. 476 (1957), had declared, "seemingly without qualification, that obscenity is not protected by the First Amendment." Id.  In Stanley, the Court eschewed Georgia's invitation to shortcut the constitutional analysis by simply invoking Roth and its unqualified broad proposition that obscenity was "utterly without redeeming social importance." Id. at 484.  Rather, the Court examined the cases that Roth had cited as authority and observed that they dealt primarily with "*public* distribution or dissemination" of obscene material, while those cases that followed similarly concerned governmental power to regulate "*public* actions … taken with respect to obscene material." Stanley, 394 U.S. at 561 (emphasis added).

The Stanley Court noted that "[n]one of the statements cited by the Court in Roth for the proposition that 'this Court has always assumed that obscenity is not protected by the freedoms of speech and press' were 2made in the context of a statute punishing mere private possession of obscene material; the cases cited deal for the most part with use of the mails to distribute objectionable material or with some form of public distribution or dissemination." Id.  Similarly, none of the cases following

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 10**

Roth involved prosecution for private possession of obscene materials.  Id.

The Court held that Georgia could not justify proscribing the reading or even possession of certain types of materials merely by labeling and categorizing them as obscene.  Id. at 565.  Whatever justifications permitted other statutes' regulation of obscenity did not warrant the "drastic invasion" of personal liberties guaranteed by the First and Fourteenth amendments.  Id.

Accordingly, in Stanley, the Court categorically proscribed criminalizing private possession of obscene material in the home. Its core enduring holding was rooted in the fundamental "right to receive information and ideas, regardless of their social worth" and the right to be free from a government empowered "to control men's minds."  Id. at 565. "If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch."  Id. at 565. Subsequent cases have limited Stanley to its core holding while not overruling it.  See e.g., United States v. Reidel, 402 U.S. 351 (1971) (recognizing that States retain broad power to regulate obscenity; the right recognized in Stanley does not extend to the distribution or commercial transportation of obscenity).

In Stanley, Georgia claimed that it was justified in proscribing the private possession of obscenity to protect the welfare of its citizens from its pernicious effects. The Court explained, however, that this interest amounts to no more than the "assertion that the State has the right to control the moral content of a person's

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 11**

thoughts." Id. Such an idea is inimical to the First Amendment and the "traditional notions of individual liberty" on which this nation was founded. Id.

### D.     Ferber and Osborne – Using Actual Child Changes Equation

While the Supreme Court's development of its obscenity doctrine, culminating in the three-part test enunciated in Miller, focused on balancing the State's interests in limiting the harm to its citizens caused by their consumption of obscenity against the danger that laws targeting sexual content would criminalize protected speech. In comparison, the State's interest in combating the rise of child pornography rested not on the effect such material had on its viewer, but rather the criminal act harming the child used as its subject. Ferber, 458 U.S. at 758.

The need for "sensitive tools" to distinguish between obscene and non-obscene speech manifested in the elements of the Miller test; however, the State's interest in preventing child pornography was not reflected by the same. For example, the exploitation of a child caused in the process of producing child pornography could not be redeemed by any serious value the work might otherwise have. Id. at 761.

The Court was even clearer in Osborne v. Ohio, 495 U.S. 103, 108 (1990) that banning depictions of child pornography was justified because it required the exploitation of actual children, rather than merely examining the lack of social value in the content of such speech itself. The Court distinguished Osborne from Stanley on the grounds that "the interests underlying child pornography prohibitions far exceed" those at stake in prohibiting obscenity. Id.

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 12**

Put another way, <u>Ferber</u> and <u>Osborne</u> did not merely plug different values into the legal framework established by the Court for identifying obscenity.  Rather, those decisions reflected the Court's determination that the production of child pornography required an entirely different analytical approach because of the involvement of an actual child subject to real harm.  Unlike the considerations involved with obscenity, the harm wrought on those children involved in producing child pornography was so substantial that the value of the speech effectively was rendered irrelevant.

Similar considerations led the Court in <u>Osborne v. Ohio</u>, 495 U.S. 103 (1990) to carve out an exception to the holding in <u>Stanley</u> where the Court had prohibited the criminalization of private possession of obscene virtual images of minors engaging in sexually explicit conduct within the sanctity of one's home.  In <u>Osborne</u>, the Supreme Court again drew a qualitative distinction between child pornography involving a real child and obscene purely virtual images of AI-generated

Thus, <u>Osborne</u> carved out an exception to the holding in <u>Stanley</u> that the First Amendment prevents the State from criminalizing the private possession of obscene images in one's home. <u>Osborne</u> held that <u>Stanley</u> did not invalidate States' bans on possessing child pornography – even within the confines of one's room.

Thus, the analyses of <u>Ferber</u>/<u>Osborne</u> versus the rationale encapsulated in <u>Stanley</u> are essentially like legal apples and oranges because the interests when an actual child is sexually exploited is qualitatively distinct from privately possessing

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 13**

and reviewing images of virtual minors. However, the concerns and interests involved when dealing with virtual images of minors does not present the grave concerns with the harm to a real child. The rationale for the exception established in Osborne that permits bans on privately possessed child pornography are too different to even draw any comparison. The 56-year-old holding in Stanley endures to present day and has not been limited to private possession of obscene images of adults only.

**E.    Ashcroft v. Free Speech Coalition Confirms Virtual Depictions Remain Protected Speech**

In Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), the Supreme Court struck down portions of the Child Pornography Prevention Act of 1996 that expanded the federal prohibition on child pornography to include not only pornographic images created using real children but also "virtual child pornography." The CPPA prohibited visual depictions of "virtual child pornography" without requiring they satisfy the three-part test for obscenity set forth in Miller. The CPPA also expanded the federal prohibition on child pornography to include visual depictions of sexually explicit conduct that were produced by means other than using real children.

Free Speech Coalition struck down portions of the CPPA that banned the images that merely *appear* to depict minors because they "proscribe a significant universe of speech that is neither obscene under Miller, nor produced by the exploitation of real children." Id. at 256. The Court declined to treat sexually explicit depictions of fictional minors as though they depicted a real child, rather than

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 14**

applying the obscenity standards.  The government claimed the need to criminalize the in-home possession of virtual images of minors related to the compelling need to protect real children from real physical and psychological harm.  See Ferber, 458 U.S. at 756-57.  However, in contrast to the speech at issue in Ferber, which is speech that is itself the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production.

Once again, the interests at stake with respect to virtual child pornography are not "intrinsically related" to the sexual abuse of real children.  Free Speech Coalition, 535 U.S. at 250.  This is because the images of virtual child pornography do not threaten harm to actual children in the production process.  The harm identified by the government from such images flows from the content of the images, rather than the means of their production.  Id.

## F.    Stanley v. Georgia Controls

The Court in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), reaffirmed and extended these principles to virtual imagery, holding that the First Amendment protects "virtual" child sexual abuse material that does not involve actual children. The Court explicitly distinguished such virtual materials from actual child sexual abuse material, noting that virtual images are "not 'intrinsically related' to the sexual abuse of children" and that "the causal link" to harm is "contingent and indirect".

Critically, the Court emphasized that New York v. Ferber, 458 U.S. 747 (1982), which permitted regulation of child sexual abuse material, "provide[d] no support for

a statute that eliminates the distinction [between actual and virtual child pornography]". The Ferber exception to First Amendment protection was predicated specifically on preventing harm to actual children during production—a rationale wholly absent when no real children are involved.

### G.   This Case Is Similarly Situated As Anderegg

In the District of Wisconsin, in United States v. Anderegg, Case No. 24-cr-50-jdp, the defendant, Steven Anderegg was charged in a multiple-count indictment with violating 18 U.S.C. § 1466A(b)(1) in the Western District of Wisconsin.  The legal issues Anderegg raised are practically identical to those presented in this brief and to be argued.

Anderegg used an AI-assisted text-to-image generative artificial intelligence model called Stable Diffusion to create thousands of realistic images of prepubescent minors.  Federal District Judge James Peterson rejected many of the government's arguments and holding that § 1466A(b)(1) is unconstitutional as applied to private possession of virtual child pornography or obscene virtual child sexual abuse material.  Notably, Judge Peterson held that the interstate commerce jurisdictional hook could not overcome Stanley's protection, observing that "[i]f the jurisdictional element were enough to overcome Stanley, Stanley would be a dead letter."

### Conclusion

The Constitution draws a bright line protecting the private possession of obscene materials in the home. That line cannot be crossed merely by congressional

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 16**

findings or jurisdictional hooks that would eviscerate the constitutional protection entirely. For the foregoing reasons, section 1466A(b)(1), as applied to defendant's alleged private possession of virtual child images, violates the First and Fourteenth Amendments. The motion to dismiss should be granted.

Date: September 03, 2025                    Respectfully submitted,

                                           /s/Thomas Monaghan
                                           Thomas Monaghan
                                           Thomas Monaghan Law, PLLC
                                           Attorney for
                                           JOSIAH PAUL YEASLEY

**Memorandum in Support of
Defendant's Motion to Dismiss - 17**

CERTIFCATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on **September 03, 2025,** I caused a true and correct copy of the foregoing Defendant's Motion to Dismiss Indictment and supporting memorandum to be served upon the individual/entity named below in the manner so indicated:

David Robins, Assistant United States Attorney
United States Attorney's Office
1290 West Myrtle St
Boise, ID  83702

VIA ECF

/s/Thomas Monaghan

**Memorandum in Support of**
**Defendant's Motion to Dismiss - 18**