UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSIAH PAUL YEASLEY,<br><br>    Defendant. | Case No. 1:23-cr-00273-AKB<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS INDICTMENT** |

Pending before the Court is Defendant Josiah Paul Yeasley's Motion to Dismiss Indictment (Dkt. 46). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motion on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").[1] For the reasons discussed below, the Court denies Yeasley's motion to dismiss.

## I.    BACKGROUND

At the time of the instant offense, Yeasley was on supervised release after serving his prison term for a 2017 conviction for access with intent to view child pornography in violation of

---

[1] While this case is a criminal case, the local civil rule regarding hearings applies because there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f); *see United States v. Rush*, No. 22-cr-00045-DCN, 2024 WL 2245574, at *1 n.1 (D. Idaho May 16, 2024) (citing local rules as basis for declining to hold hearing on pending criminal motion).

18 U.S.C. § 2252A(a)(5)(B). *United States v. Yeasley*, No. 16-cr-00179-BLW-1 (D. Idaho 2016 Feb. 8, 2017), Judgment, Dkt. 32 at 2-3. As a condition of his supervised release, Yeasley's electronic devices were subject to monitoring (Dkt. 47 at 2).

In May 2023, Yeasley's supervising probation officer received an alert from the monitoring software installed on Yeasley's phone indicating that Yeasley had accessed child sexual abuse material (*id.*). The software captured an image[2] stored on Yeasley's phone depicting a realistic, virtual baby in a highchair performing fellatio on an adult man (Dkt. 16 at 2; Dkt. 47 at 2). Based on this conduct, Yeasley was indicted on October 11, 2023, for possession of obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(b)(1) (Dkt. 2).

Section 1466A(b)(1) makes it unlawful for a person to knowingly possess a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting that depicts a minor engaging in sexually explicit conduct and that is obscene. § 1466A(b)(1)(A), (B). Further, the offense has an interstate commerce element requiring that the visual depiction "has been mailed or has been shipped or transported in interstate or foreign commerce by any means, including by computer, or was produced using materials that have been mailed, or that have been shipped or transported in interstate or foreign commerce by any means, including by computer." § 1466A(d)(4).

---

[2] The record is inconsistent regarding whether there are one or two images. In Yeasley's supporting memorandum, Yeasley states it is undisputed "two images" are the subject of the indictment (Dkt. 46-1 at 6). The Government's response brief, however, describes "an image" (Dkt. 47 at 2). Then, on reply, Yeasley states the case involves only a single virtual image (Dkt. 48 at 1). Regardless, whether there are one or more images, the Court's analysis is the same.

On February 13, 2024, a superseding indictment was filed; it mirrored the original indictment but added a special allegation asserting that Yeasley's possession "of obscene visual representations of the sexual abuse of children" occurred after his 2017 conviction for accessing child pornography with the intent to view it (Dkt. 25 at 2). The Government asserts that based on Yeasley's 2017 conviction, his offense in this case requires a ten-year mandatory minimum term of imprisonment under § 1466A(b), which incorporates the enhanced penalties of § 2252A(b)(2) (Dkt. 25 at 2). On September 3, 2025, Yeasley filed a motion to dismiss the indictment (Dkt. 46).

## II.   LEGAL STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A motion to dismiss is generally "capable of determination" before trial if it involves questions of law rather than fact. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). Although the court may make preliminary factual findings necessary to decide legal questions presented by a motion, the court may not invade the jury's province. *Id.* "A motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citation modified). Under this standard, "the district court must decide the issue raised in the pretrial motion before trial if it is entirely segregable from the evidence to be presented at trial." *Id.* (citation modified).

A defendant may seek dismissal of an indictment on the grounds that the statute authorizing the charge is unconstitutional. Such a challenge may be either a facial or an as-applied attack to

the statute's constitutionality. An as-applied challenge, which Yeasley asserts here, is based on a developed factual record and the statute's application to the defendant. *Spence v. Washington*, 418 U.S. 405, 414 (1974).

### III.   ANALYSIS

Yeasley asserts § 1466A(b)(1) is unconstitutional because it violates his rights "under the First, Fourth, and Fourteenth Amendments to the United States Constitution as applied to him" and because § 1466A is overbroad (Dkt. 46 at 1). Yeasley's supporting memorandum and reply brief, however, only assert that § 1466A(b)(1) violates his First Amendment rights as applied to him based on Supreme Court authorities (Dkt. 46-1 at 1; Dkt. 48 at 4). Accordingly, the Court limits its analysis to whether § 1466A(b)(1) is unconstitutional under the First Amendment as applied to Yeasley under those authorities.

The First Amendment prohibits Congress from making any law "abridging the freedom of speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003). "[A] law imposing criminal penalties on protected speech" constitutes suppression of speech. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). The right to freedom of speech, however, is "not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). The Supreme Court has long held that certain categories of speech—such as defamation, incitement, obscenity, and child pornography involving an actual child—do not receive First Amendment protection. *Free Speech Coalition*, 535 U.S. at 245-46; *New York v. Ferber*, 458 U.S. 747, 774 (1982).

Here, Yeasley was charged with § 1466A(b)(1), which criminalizes the knowing possession of obscene visual depictions of minors, either real or virtual, engaged in sexually explicit conduct. Because the statute applies only to images that are "obscene," it reaches speech

that is, by definition, not constitutionally protected. 18 U.S.C. § 1466A(b)(1)(B); *see Hamling v. United States*, 418 U.S. 87, 118-19 (1974) (noting "obscene" is a legal term of art incorporating associated jurisprudence). Yeasley does not challenge that the image at issue here is obscene; rather, he acknowledges it is obscene (*See* Dkt. 46-1 at 1) (challenging § 1466(b)(1) as applied to "his alleged private, in-home possession of purely virtual obscene imagery"). Accordingly, the Court assumes for purpose of its analysis that the image is obscene under *Miller v. California*, 413 U.S. 15, 24 (1973) and is squarely within a category of unprotected speech which § 1466A proscribes.

Although obscene material ordinarily falls outside the First Amendment's protection, Yeasley argues his possession of an obscene AI-generated image of a minor engaging in sexually explicit conduct is shielded by the constitutional right to possess obscene materials in the privacy of his home. In support, Yeasley relies on *Stanley v. Georgia*, 394 U.S. 557 (1969), which he argues "categorically proscribe[s] criminalizing private possession of obscene material in the home" (Dkt. 46-1 at 11). In *Stanley*, the Supreme Court held that a Georgia statute criminalizing "the mere private possession of obscene matter" violated the First Amendment. 394 U.S. at 559. In doing so, the Court rejected Georgia's argument that the statute was necessary to "protect the individual's mind from the effects of obscenity" as insufficient to "justify infringement of the individual's right to read or observe what he pleases." *Id.* at 568.

Here, the Government argues *Stanley* is inapplicable because Yeasley was not charged merely with possession of obscene materials (Dkt. 47 at 9-10). Rather, the indictment alleges the obscene image Yeasley possessed was transported using the internet (Dkt. 25 at 1), and § 1466A proscribes the possession of any visual depiction involved in interstate commerce. *See*

§ 1466A(d)(4) (stating interstate commerce element). The Government contends this interstate commerce element distinguishes this case from *Stanley* (Dkt. 47 at 10).

In response, Yeasley argues "the interstate commerce jurisdictional hook [cannot] overcome *Stanley*'s protection" (Dkt. 46-1 at 16). In support, he relies on *United States v. Anderegg*, No. 3:24-cr-00050 (W.D. Wisc. Feb. 13, 2025), Dkt. 73. In that case, Anderegg (like Yeasley) was charged under § 1466A with possession of AI-generated images of children engaged in sexually explicit conduct. *Anderegg*, No. 3:24-cr-00050, at 2-3. The court dismissed the indictment, holding that § 1466A(b)(1) "is unconstitutional as applied to Anderegg's private possession of obscene virtual child pornography." *Andregg*, No. 3:24-cr-00050, at 19. In doing so, the court found that § 1466A(b)(1)'s "jurisdictional element did not meaningfully distinguish the case from *Stanley*" because "the obscene materials in *Stanley* (reels of eight-millimeter film) almost certainly moved in interstate commerce too." *Andregg*, No. 3:24-cr-00050, at 18-19. In other words, the court assumed the Supreme Court in *Stanley* would have reached the same conclusion even if the Georgia statute at issue had an interstate commerce element.

Yeasley urges this Court to adopt the same assumption as the *Anderegg* court. Relying on *Anderegg*, Yeasley argues that "the reel-to-reel films at issue in *Stanley* did not spontaneously appear in [Anderegg's] desk drawer," meaning the Supreme Court must have known and considered that the obscene material traveled through commerce (Dkt. 48 at 11). According to Yeasley, the Supreme Court's decision to strike down the Georgia statute in *Stanley* necessarily means the inclusion of an interstate commerce requirement in § 1466A is insufficient to overcome the rule in *Stanley*.

**MEMORANDUM DECISION AND ORDER - 6**

This Court disagrees with the assumption that the Supreme Court implicitly considered that the obscene materials at issue in *Stanley* must have necessarily traveled through interstate commerce. To the contrary, the *Stanley* Court distinguished its decision from its other decisions which involved interstate commerce. 394 U.S. at 560-61 ("None of the statements cited by the Court in [*Roth v. United States*, 354 U.S. 476, 485 (1957)] for the proposition that this Court has always assumed that obscenity is not protected by the freedom of speech and press were made in the context of a statute punishing mere private possession; the cases cited deal for the most part with use of the mails to distribute objectionable material or with some form of public distribution or dissemination." (cleaned up)). In other words, the *Stanley* Court expressly distinguished *Stanley* on the basis that the facts in that case did not involve interstate commerce.

Moreover, *Stanley* is now "superannuated," as the Government notes (Dkt. 47 at 4). The Supreme Court has consistently construed *Stanley* narrowly. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 288-89 (2008) (noting *Stanley*'s holding was limited to "the mere possession of obscene material involving adults"); *Osborne v. Ohio*, 495 U.S. 103, 108 (1990) (noting "*Stanley* should not be read too broadly"); *Smith v. United States*, 431 U.S. 291, 307 (1977) ("*Stanley* did not create a right to receive, transport, or distribute obscene material . . . ."); *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 126-29 (1973) (distinguishing *Stanley* and ruling that "the Constitution does not compel, and Congress has not authorized, an exception for private use of obscene material"); *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376 (1971) (holding private user is not entitled to import obscene material).

Here, in contrast to *Stanley*, Yeasley's conduct involved the alleged transportation of an image, which he concedes is obscene, in interstate commerce, i.e., from the internet via his

**MEMORANDUM DECISION AND ORDER - 7**

cellphone. For this reason, this Court concludes that Yeasley's alleged conduct falls outside the narrow constitutional protection the Supreme Court recognized in *Stanley* for mere private possession. Because § 1466A(d)(1) requires that the obscene material travel through interstate commerce, it does not violate the privacy right articulated in *Stanley*, and *Stanley* does not protect Yeasley. *See United States v. Taylor*, ACM 38700, 2016 WL 787245, at *7 (A.F. Ct. Crim. App. Feb. 25, 2016) ("Appellant possessed obscene materials transported through interstate commerce. We believe this distinction is sufficient to remove Appellant's case from the protection of *Stanley*."); *United States v. Handley*, 564 F. Supp. 2d 996, 1001 (S.D. Iowa 2008) (rejecting notion that *Stanley* creates "any correlative right to transport obscene material in interstate commerce).

The Court also rejects Yeasley's argument that *Free Speech Coalition* "confirms virtual depictions [are] protected speech" (Dkt. 46-1 at 14). In that case, the Supreme Court addressed the constitutionality of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2251 *et seq.*, which extended "the federal prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using real children." *Free Speech Coalition*, 535 U.S. at 239. Specifically, the Court addressed "whether the CPPA is constitutional where it proscribes a significant universe of speech that is neither obscene under *Miller* nor child pornography under [*New York v. Ferber*, 458 U.S. 747 (1982)]." *Free Speech Coalition*, 535 U.S. at 240. In *Ferber*, the Court held that pornography depicting an actual child can be proscribed whether or not the images are obscene under the *Miller* test. *Ferber*, 458 U.S. at 761.

In other words, the Supreme Court in *Free Speech Coalition* considered whether the CPPA's proscription of virtual child pornography, which was not obscene, violated the First Amendment. 535 U.S. at 240. The Court answered this question in the negative and affirmed the

Ninth Circuit's holding that the CPPA is "substantially overbroad because it bans materials that are neither obscene nor produced by the exploitation of real children." *Id.* at 243.

Yeasley's conduct here is not protected under the rule in *Free Speech Coalition*. Contrary to Yeasley's argument, *Free Speech Coalition* does not stand for the proposition that *all* virtual depictions of child pornography are protected. *See Handley*, 564 F. Supp. 2d at 1002 (concluding § 1466A(b)(1) does "not suffer from the same defect [as] found in the CPPA in *Free Speech Coalition*" because it requires obscenity). Here, Yeasley concedes the virtual image he possessed is obscene. Because it is concededly obscene, it is unprotected speech.

Finally, the Court rejects Yeasley's argument that the constitutional right to possess obscenity for personal use includes the right to receive obscene material for such purpose (Dkt. 46-1 at 11; Dkt. 48 at 11). The Supreme Court has previously rejected this argument in *United States v. Orito*, 413 U.S. 139 (1973). There, the Court held that "the right to possess obscene material in the privacy of the home . . . [does not] create[] a correlative right to receive it." *Id.* at 141; *see also Smith v. United States*, 431 U.S. 291, 307 (1977) (noting "*Stanley* did not create a right to receive, transport, or distribute obscene material"); *United States v. Reidel*, 402 U.S. 351, 359-60 (1971) (Harlan, J., concurring) ("[T]he 'right to receive' recognized in *Stanley* is not a right to the existence of modes of distribution of obscenity which the State could destroy without serious risk of infringing on the privacy of a man's thoughts; rather, it is a right to a protective zone ensuring the freedom of a man's inner life, be it rich or sordid."). Likewise, the Ninth Circuit has held that the "Constitution does not protect the right to receive obscenity through the mails for personal use." *United States v. Hurt*, 795 F.2d 765, 771 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 707 (9th Cir. 1987).

Accordingly, the Court concludes that § 1466A(b)(1) is constitutional as applied to Yeasley's private, in-home possession of obscene, virtual child pornography.

### IV.   ORDER

**IT IS ORDERED that:**

1. Defendant Yeasley's Motion to Dismiss Indictment (Dkt. 46) is **DENIED**.

DATED: November 03, 2025

Amanda K. Brailsford
U.S. District Court Judge